UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLAR COVINGTON, JR., : Civil Action No. 15-8655 (JLL)

Petitioner,

v. : OPINION

UNITED STATES OF AMERICA,

Respondents.

**LINARES**, District Judge:

Presently before the Court is the amended motion of Kellar Covington, Jr., ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No 9). Following an extension, the Government filed a response to the amended motion (ECF No. 12). Petitioner did not file a reply. For the following reasons, this Court will deny Petitioner's amended motion and deny him a certificate of appealability.

## I. BACKGROUND

On February 25, 2014, Petitioner, Kellar Covington, Jr., pled guilty via a plea agreement to a one count information charging him with aiding and abetting the filing of false tax returns in violation of 26 U.S.C. § 7206(2). (Docket No. 14-85 at ECF No. 10-13). Pursuant to his plea agreement, Petitioner pled guilty in exchange for an agreement from the Government not to seek further charges in relation to Petitioner's filing of false tax returns on behalf of his clients for the 2006, 2008, and 2009 tax years. (Docket No. 14-85 at ECF No. 12). Petitioner's plea agreement directly informed Petitioner that, in pleading guilty, he would be subject to a three year statutory maximum sentence accompanied by appropriate fees and a period of supervised release, and that

1

his sentence would be subject to the discretion of the trial court judge after consultation with the advisory sentencing guidelines. (*Id.* at 2-3). Petitioner's plea agreement contained stipulations as to the loss amount involved in this case, and that, should the Court accept that stipulation, Petitioner could not raise an appeal or collateral attack challenging that acceptance. (*Id.* at 7). Petitioner's plea agreement, however, did not contain any terms preventing Petitioner from arguing for a below guidelines sentence. (*Id.* at 1-7).

On February 25, 2014, Petitioner appeared before Magistrate Judge Clark, to whom Judge Hochberg referred Petitioner's plea hearing, to plead guilty. (Document 7 attached to ECF No. 12 at 1). After ensuring that Petitioner understood the rights he was waiving by pleading guilty to the information, the magistrate again explained to Petitioner his maximum sentencing exposure, the discretion of the district court at sentencing, and the role of the sentencing guidelines at sentencing. (*Id.* at 18-29). Petitioner then provided the factual basis for his plea. (*Id.* at 28). In that factual basis, Petitioner admitted that he had met with his clients after being hired to prepare their tax returns, that he had then falsely and fraudulently prepared those returns to ensure a greater refund by overstating "losses, . . . gifts to charity, job expenses[,] and real estate losses." (*Id.* at 29-30). Petitioner admitted to overstating these amounts in at least four different 2007 tax returns. (*Id.* at 30). Petitioner then explained that he overstated thousands of dollars in charity donations and expenses for several clients, that he knew the information he placed in those returns was false when he produced the returns, and that he received a fee in return for falsely filing these returns. (*Id.* at 31-32). Petitioner thus admitted his guilt to the charged offense, resulting in a tax loss to the Government of over one hundred and forty thousand dollars. (*Id.* at 32-33). Based on Petitioner's factual recitation and knowing waivers of his rights, Magistrate Judge Clark recommended that the Court accept Petitioner's guilty plea. (*Id.* at 33-35). Judge Hochberg

adopted the Magistrate Judge's report and recommendation and thus accepted Petitioner's guilty plea by way of an order issued on March 12, 2014. (Docket No. 14-85 at ECF No. 15-16).

Judge Hochberg held a sentencing hearing for Petitioner on July 8, 2014. (Document 8 attached to ECF No. 12). At sentencing, both the Government and Petitioner's counsel agreed to the PSR's recommended offense level of 15, criminal history category of one, and resulting guidelines range of 18 to 24 months. (*Id.* at 4). The parties also agreed that the statute required at least a one year period of supervised release and appropriate fines. (*Id.* at 4-5). Following these agreements, Judge Hochberg asked whether either side had any arguments for variance or downward departures. (*Id.* at 5). Neither side presented any application for a variance. (*Id.*).

Petitioner's counsel then presented his sentencing argument. (*Id.*). Initially, in response to a question from the Court, Petitioner's counsel admitted that there were several self-policing tax credits which had been the source of many of the tax fraud cases which were occurring at the time of Petitioner's offense. (*Id.* at 6). After answering that question, counsel presented several arguments suggesting that, under the sentencing factors, Petitioner should receive a sentence on the lower end of the guideline range. (*Id.* at 7-8). In so doing, counsel informed the Court that Petitioner had no prior record, had overcome a limited educational background following the death of his father, and had raised his children despite the personal problems of his wife. (*Id.* at 8). Counsel also argued that Petitioner's positive effects on his community and support therefrom, as evinced by the various letters submitted on his behalf by friends and family, in combination with Petitioner's history and regret for his actions suggested that Petitioner should receive a lenient sentence. (*Id.* at 8-10). In making that argument, and apparently in response to the Court's questions regarding how common tax fraud cases had become, counsel recognized that Petitioner's receipt of some level of custodial sentence "will be a general deterrent to others in the community

3

[and] will be a specific deterrent to" Petitioner. (*Id.* at 9). Finally, as part of his argument, counsel suggested that he could "not ask for a sentence lower than . . . the guidelines" range, as he was apparently under the mistaken belief that he was foreclosed from so arguing by the plea agreement. (*Id.* at 10).

In its response to these arguments, the Government informed the Court that Petitioner was not foreclosed from making arguments for a below guidelines range, and, although the Government believed a custodial sentence should be imposed and did not agree that a departure was warranted, "if the Court wants to consider a sentence below the guideline range based on [defense counsel's arguments], . . . [the] pela agreement [does not] prohibit[] that." (*Id.* at 14-16). Based on these presentations, Petitioner's background, and the need for deterrence of Petitioner and the general public, the Court thereafter sentenced Petitioner to eighteen months imprisonment, the bottom of the guidelines range, and one year of supervised release. (*Id.* at 17-18). Once sentencing had concluded and all issues had been dealt with by the Court, defense counsel introduced his law clerk to Judge Hochberg. (*Id.* at 23-24). Following this introduction, Judge Hochberg specifically informed Petitioner that his counsel had done "a wonderful job" arguing in his favor, and that many others facing similar charged had received harsher sentences absent such representation. (*Id.*).

After the conclusion of sentencing, however, defense counsel realized his mistake as to his ability to argue for a downward departure, and thus filed a motion with the court to correct Petitioner's sentence. (Docket No. 14-85 at ECF No. 21). In his certification in support of that motion, counsel explained that, during his representation of Petitioner, there had been two plea agreements offered, one of which did not permit a downward variance argument. (Docket No. 14-85 at Document 3 attached to ECF No. 21). Counsel further stated that, during his sentencing

4

argument, he had mistakenly thought that it was this harsher plea agreement which had applied, rather than the agreement Petitioner had signed which permitted a downward variance argument. (*Id.*). Realizing his mistake, counsel had asked, and received, the Government's consent to his making a motion to correct the sentence so that he could argue for a downward variance to rectify any "ineffective counseling" resulting from counsel's mistake as to the applicable plea agreement. (*Id.*). The trial court, following briefing on the motion, ultimately granted the motion to reduce Petitioner's sentence, and, on September 5, 2014, entered an amended judgment ordering that Petitioner be imprisoned for thirteen months, followed by a one year supervised release term with five months of home confinement. (Docket No. 14-85 at ECF No. 32).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

denied 444 U.S. 865 (1979); see also Morelli v. United States, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## B. An evidentiary hearing is not required in this matter

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005); United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." Judge v. United States, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); see also Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); see also United States v. Tuyen Quang Pham, 587 F. App'x 6, 8 (3d Cir. 2014); Booth, 432 F.3d at 546. For the reasons set forth below, all of Petitioner's ineffective assistance claims are without merit based on the record of this matter, and no hearing is therefore required for the resolution of Petitioner's amended motion to vacate sentence.

## C. Petitioner's Ineffective Assistance Claims

In his amended motion to vacate sentence, Petitioner asserts numerous claims in which he asserts that his trial counsel was constitutionally ineffective during the various stages of his prosecution. The legal standard which applies to ineffective assistance of counsel claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the

6

'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81. In his motion and amended motion, Petitioner presents twelve claims of ineffective assistance which can be grouped into three major assertions: that counsel was ineffective in investigating Petitioner's case prior to his plea deal in that counsel "failed" to respond to the prosecution's requests for more information and failed to investigate Petitioner's clients as potential defense witnesses (Petitioner's claims one and two); that counsel was ineffective in failing to secure a more favorable bail arrangement for Petitioner (Petitioner's claims three through five); and that counsel was constitutionally ineffective at sentencing insomuch as counsel failed to ask for a below guidelines sentence even after being prompted to do so by the comments of the Court and prosecution, stated that a custodial sentence was appropriate for deterrence, and was "more interested in introducing his new law clerk to the judge" than in representing Petitioner. (Petitioner's claims six through eight and ten through thirteen).[1]

### 1. Petitioner's pre-trial investigation claims

In his first two claims, Petitioner asserts that his trial counsel proved constitutionally ineffective in failing to investigate Petitioner's case both by failing to investigate what information Petitioner possessed and could provide to the Government regarding other criminal activities, and in failing to investigate Petitioner's clients as potential witnesses at trial. As one court in this district has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to

---

[1] Petitioner also originally had an additional claim, Petitioner's claim nine, in which he attempted to assert that counsel failed to challenge the loss amount. (ECF No. 1 at 11). Petitioner, however, formally withdrew that claim in his amended motion to vacate sentence (ECF No. 9 at 7 n. 2), and this Court therefore need not address it in this opinion.

conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Although Petitioner asserts that trial counsel failed to investigate both what information Petitioner had to provide to the Government about other criminal activities and that counsel failed to investigate potential defense witnesses in the form of Petitioner's former clients, Petitioner has utterly failed to present any evidence of what such an investigation would have produced. Instead, Petitioner provides nothing more than his own speculation, stating that he "believes" he had

9

unspecified information of value and that had this speculative information been shared, the Government *may* have offered a more favorable plea agreement. (ECF No. 9 at 7). As to the potential witnesses, Petitioner likewise expresses only that, had Petitioner's clients been interviewed, "the clients would have provided him a defense" because Petitioner believes these witnesses would have said that they were "intimidated by federal agents who accused them of filing false [tax] returns."[2] (*Id.* at 8). Petitioner has failed to provide any evidentiary support for these claims. Petitioner has certainly failed to provide a comprehensive showing of what information counsel would have discovered had he investigated as Petitioner now contends he should have. *Brown*, 2016 WL 1732377 at *4-5; *see also Askew*, 88 F.3d at 1073. As such, Petitioner has not provided any information which would permit this Court to conclude that, had counsel so investigated, there is a reasonable probability that the outcome of his plea or trial would have been different, and Petitioner has thus failed to demonstrate prejudice as to his investigation related claims. *Brown*, 2016 WL 1732377 at *4-5; *see also Askew*, 88 F.3d at 1073. Petitioner has therefore failed to establish ineffective assistance of counsel on that basis.

### 2. Petitioner's bail related claims

In his next series of claims, Petitioner asserts that his trial counsel was constitutionally ineffective in that he failed to rebut claims that Petitioner was likely to flee during a pre-trial hearing, which resulted in Petitioner having to "wear an ankle bracelet" following his arraignment. In his amended motion, however, Petitioner fails to in any way identify how his having to wear an ankle bracelet during the pre-trial phase of his criminal proceedings in any way affected the

---

[2] This Court also notes that the failure of Petitioner to provide sworn statements as to what testimony these alleged witnesses would have provided renders him incapable of showing that he suffered *Strickland* prejudice from counsel's failure to interview them and ultimately call them as witnesses at trial. *See Judge*, 119 F. Supp. 3d at 285; *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

10

ultimate outcome of his prosecution – Petitioner's conviction and the length and severity of his sentence. *Strickland* prejudice requires such a showing. 466 U.S. at 692-93. Even if the Court were to assume, *arguendo* that, had counsel made the arguments regarding his flight risk Petitioner now raises, the trial judge would have released him pending trial without an ankle bracelet, that does not establish that the outcome of Petitioner's *prosecution* would have been any different. Simply put, the outcome of Petitioner's arraignment had no clear effect on the outcome of his prosecution or his sentence, and thus Petitioner cannot show that he was prejudiced sufficient to make out a claim of ineffective assistance of counsel based on the outcome of his arraignment. *Id.* Thus, Petitioner has failed to show that he suffered *Strickland* prejudice in any of three claims in which he challenges counsel's performance during arraignment regarding Petitioner's flight risk, and his claims of ineffective assistance of counsel on that basis must therefore be denied. *Id.*; *Cross*, 308 F.3d at 315.

### 3. Petitioner's sentencing claims

In his final series of claims, Petitioner asserts that his trial counsel was ineffective at sentencing insomuch as counsel failed to argue for a below guidelines range sentence because counsel inadvertently believed that he was precluded from doing so under Petitioner's plea agreement. Petitioner also argues that counsel acted against his interests in admitting that deterrence was a legitimate sentencing interest in tax related crimes, that counsel assured him he would receive a probationary sentence and then failed to argue for such,[3] and that counsel was

---

[3] Although Petitioner asserts that counsel "induced" him to plead guilty by assuring him he would receive a probationary sentence, Petitioner does not assert that counsel was ineffective in advising him to plead guilty on the basis of counsel's alleged promise to deliver a probationary sentence. Had Petitioner attempted to raise such a claim, however, it would fail as Petitioner was clearly advised via the plea agreement, Rule 11 application, and plea colloquy as to the Court's discretion, the advisory nature of the sentencing guidelines, and the mandatory maximum sentence he faced. *See United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (erroneous sentencing prediction will not provide basis for ineffective assistance of counsel claim where an adequate plea hearing was conducted); *United States v. Sherdrick*, 493 F.3d 292, 299 (3d Cir. 2007) (plea hearing adequate to dispel harm from erroneous sentencing prediction where the petitioner is informed of the maximum sentencing exposure, the discretion of the trial judge, and

more interested in introducing his law clerk to the judge than in securing a better sentence for Petitioner. Turning first to Petitioner's final argument, the sentencing transcript makes it abundantly clear that counsel was not more concerned with introducing his law clerk than providing an adequate defense for Petitioner. Instead, the transcript shows that counsel sought to introduce his clerk only after having provided sentencing arguments for Petitioner which the sentencing judge deemed a "wonderful job." Petitioner's argument on that count thus finds no support in the record, and is insufficient to show that counsel was constitutionally ineffective.

Likewise, Petitioner's argument that counsel was acting more as a prosecuting attorney than a defense attorney, insomuch as counsel commented on the need to deter Petitioner and those similarly situated, lacks an appreciation for the context in which counsel made those comments. When read in context, counsel's comments regarding the need to deter, and his explanation of the reason so many tax fraud cases had arisen at the time based on the self-policing nature of the tax code, were comments made directly in response to the sentencing judge's concern for the growing number of tax fraud cases with which the Court had been faced at the time. It likewise appears that counsel's comments regarding the need to deter was a concession made to assuage sentencing court's concern that a deterrent was necessary to limit this growing number of tax fraud cases, and in turn convince the court that a minimal sentence, as opposed to a sentence higher along the guidelines range, would be adequate to deter others from breaching these self-policing tax credits. Petitioner's argument that counsel acted more like a prosecutor than as his counsel at sentencing thus, at best, lacks an appreciation for the context of counsel's comments and of the sentencing judge's concerns with the large number of tax prosecutions before the Court.

---

the nature and effects of the sentencing guidelines); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) (same). (*See also* Document 6 attached to ECF No. 12 at 3-7; Document 7 attached to ECF No. 12 at 18-29; Docket No. 14-85 at ECF No. 12 at 2-3).

12

Even putting aside these factual holes in Petitioner's arguments, the ultimate problem all of Petitioner's sentencing ineffective assistance claims face is that Petitioner cannot show that he suffered prejudice as a result of counsel's actions at and after sentencing. Even granting that counsel was clearly mistaken that he could not argue for a downward departure at sentencing, that error was addressed in this matter by counsel's post-sentencing motion to reduce Petitioner's sentence. In his briefs in support of that motion, trial counsel made extensive arguments in support of a request for a below-guidelines range sentence, which ultimately resulted in a corrected, reduced sentence from the Court which provided for five months of house arrest and in turn five fewer months of custodial incarceration. Thus, Petitioner has already received the benefit of the arguments he now asserts trial counsel should have made because trial counsel *did make* those arguments, albeit in a post-sentencing motion. Because counsel's mistaken beliefs regarding the plea agreement have already been addressed, and because counsel's post-sentencing motion has already provided Petitioner with a sentence below the bottom of the guidelines range, it is clear that any prejudice Petitioner may have suffered from that mistake has been alleviated.

This is not a case in which the Court must guess at what would have occurred had counsel argued for a downward departure, the sentencing judge already answered that question in granting Petitioner's motion for a reduced sentence. Any prejudice Petitioner may have suffered from counsel's performance has thus already been addressed, and there is nothing in the record which suggests that, had counsel made additional unspecified arguments at sentencing or in his post-sentencing motion, Petitioner would have received a sentence below that imposed upon him in the amended judgment in this case. As such, Petitioner has failed to establish that he suffered any prejudice from counsel's alleged failings at sentencing which was not completely alleviated by the amended judgment and Petitioner's resulting below guidelines range sentence. Petitioner's failure

to establish any prejudice from counsel's representation precludes him from establishing ineffective assistance of counsel, and Petitioner is therefore not entitled to relief, and his motion to vacate sentence must therefore be denied. *Strickland*, 466 U.S. at 692-93; *Cross*, 308 F.3d at 315.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has failed to establish that he suffered *Strickland* prejudice and has thus failed to show ineffective assistance of counsel. He has therefore not made a "substantial showing" of the denial of a constitutional right. Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to establish ineffective assistance of counsel, Petitioner's claims are inadequate to deserve encouragement to proceed further, and Petitioner is denied a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's amended motion to vacate his sentence (ECF No. 9) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

_____
Hon. Jose L. Linares,
United States District Judge